**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA PENSACOLA DIVISION**

JOE RANSOM,

Petitioner,

v. CASE NO. 3:02cv233-RH/MD

MICHAEL MOORE,

Respondent.

_________________________________________/

**ORDER GRANTING HABEAS RELIEF**

This petition for writ of habeas corpus challenges a state-court conviction for attempted murder, kidnaping, and robbery of two victims. The conviction was obtained partly on the basis of a statement about what happened given by one of the victims to a law enforcement officer two days after the events at issue. The victim—a person of diminished mental capacity and uncertain mental health—did not testify at the trial. The victim's statement was admitted into evidence through the testimony of the law enforcement officer to whom the statement was made. Admission of this hearsay testimony was an obvious and undeniable violation of the confrontation clause, both under the controlling decisions of the United States

Supreme Court as extant at the time of the trial, *see, e.g., Ohio v. Roberts*, 448 U.S. 56, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980), and under the Supreme Court's more recent formulation in *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). The error was not harmless: the prosecutor emphasized the testimony in his opening statement and closing argument; the testimony squarely contradicted petitioner's entire theory of defense; and of the three other eye witnesses, only one implicated petitioner, and that one was drunk. Although petitioner defaulted this issue by failing to raise it on direct appeal, the failure was the result of constitutionally ineffective assistance of his appellate counsel. Petitioner has shown cause for and prejudice from the default. I grant the writ.

## I
## The Charges and Trial

This case involves five men, all homeless or at least itinerant, who were in a wooded area on May 5, 1996. Two of the men, Eddie Jerkins and Ricky Higdon, were assaulted. The state charged that the assaults were committed by the other three: petitioner Joe Ransom and co-defendants Barry Crowe and Rayburn Harris. The charges were in six counts: (1) attempted first-degree murder of Mr. Jerkins with a weapon, (2) kidnaping Mr. Jerkins with a weapon, (3) robbery of Mr. Jerkins with a deadly weapon, (4) attempted first-degree murder of Mr. Higdon

with a weapon, (5) kidnaping Mr. Higdon with a weapon, and (6) robbery of Mr. Higdon with a deadly weapon. (Document 14, Ex. A, vol. IV, at 51-55.)

Mr. Harris pled guilty to some of the charges in exchange for the state's agreement not to recommend a sentence in excess of 18 years. Petitioner and Mr. Crowe went to trial. Petitioner's theory of defense was that he was present in the area but did not participate in the crimes. The jury convicted both defendants on all counts.

The evidence was sufficient to sustain the convictions but was by no means overwhelming. A jury could have resolved the matter either way.

Three of the five people who were present in the area at the time of the assaults testified at the trial. One said petitioner participated in the assaults; the second did not address the issue of petitioner's participation one way or the other; and the third said *Mr. Harris* committed the assaults without implicating petitioner. The other two people who were present in the area did not testify.

A more complete description is as follows.

Mr. Jerkins, a victim, said Mr. Crowe and petitioner assaulted Mr. Jerkins and, together with Mr. Harris, then took Mr. Higdon away. This was eye witness testimony of petitioner's guilt. But Mr. Jerkins' blood alcohol level, as measured

shortly after the assaults, was .299.[1] He thus was highly intoxicated, or so a jury could have found. Although Mr. Jerkins identified petitioner at trial, he had been unable to do so earlier from a photographic array. A jury would not have been required to accept Mr. Jerkins' testimony.

Mr. Higdon, the other victim, did not testify.

Mr. Harris, the defendant who pled guilty, testified that the two victims and three defendants were present in the area at the time of the assaults. He said nobody else was there. Mr. Harris did not testify about the assaults themselves and thus did not say petitioner did, or did not, participate in them.

Mr. Crowe, petitioner's co-defendant at the trial, testified that *Mr. Harris* committed the assaults. He said that all five men had been together for a time; that Mr. Crowe and petitioner walked away to the area of a concrete slab; that about ten minutes later Mr. Harris came to the slab holding Mr. Higdon by his hair and pointing a knife at him; that Mr. Harris made a comment indicating he had assaulted Mr. Jerkins (who was not present at the slab); and that Mr. Crowe again walked away. Mr. Crowe did not say that petitioner participated in the assaults in any way.

Petitioner did not testify.

---

[1] Mr. Jerkins was not driving. For reference, however, it is noted that the legal limit for driving in Florida is 0.08. Mr. Jerkins' blood alcohol level was some three and a half times the legal limit.

In addition to this eye witness testimony, there was uncontradicted evidence that when two law enforcement officers arrived at the concrete slab soon after the assaults, they found petitioner and Mr. Crowe standing over Mr. Higdon, who lay tied up and bleeding. (Tr. 176-77; Tr. 302-04.)[2] The officers testified that they saw Mr. Crowe make a gesture as if throwing something away and found a knife in that area. The state also presented evidence that petitioner's hands were injured and that Mr. Higdon's blood was on petitioner.

## II
## The Hearsay Testimony

In addition to the evidence set forth above, the state introduced, over objection explicitly based partly on the confrontation clause, the testimony of one of the investigating officers with respect to an account of the events allegedly provided by the non-testifying victim, Mr. Higdon, two days after the events. Mr. Higdon was mildly retarded and functioned at the first-grade level. He also had mental health issues and would have suffered emotional trauma if required to testify (or so the state contends). These circumstances presumably would have made Mr. Higdon a poor witness.

Mr. Higdon's account, according to the officer, was that all three defendants

[2] Citations in the form "Tr." followed by a number are to the trial transcript, included in this record at Document 14, Ex. A.

participated in the assaults. Because Mr. Higdon did not testify, he was never subjected to cross-examination, and the jury was unable to observe his demeanor.

The officer's testimony regarding what Mr. Higdon told him obviously was hearsay and presumably would not even have been offered but for a rather remarkable statute adopted by the State of Florida in 1995. The statute allows introduction of an elderly person or disabled declarant's out-of-court statements under specified circumstances. The statute provides:

> Hearsay exception; statement of elderly person or disabled adult.—
>
> (a) Unless the source of information or the method or circumstances by which the statement is reported indicates a lack of trustworthiness, an out-of-court statement made by an elderly person or disabled adult, as defined in s. 825.101, describing any act of abuse or neglect, any act of exploitation, the offense of battery or aggravated battery or assault or aggravated assault or sexual battery, or any other violent act on the declarant elderly person or disabled adult, not otherwise admissible, is admissible in evidence in any civil or criminal proceeding if:
>
> 1. The court finds in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability. In making its determination, the court may consider the mental and physical age and maturity of the elderly person or disabled adult, the nature and duration of the abuse or offense, the relationship of the victim to the offender, the reliability of the assertion, the reliability of the elderly person or disabled adult, and any other factor deemed appropriate; and
>
> 2. The elderly person or disabled adult either:
>
> a. Testifies; or

> b. Is unavailable as a witness, provided that there is corroborative evidence of the abuse or offense. Unavailability shall include a finding by the court that the elderly person's or disabled adult's participation in the trial or proceeding would result in a substantial likelihood of severe emotional, mental, or physical harm, in addition to findings pursuant to s. 90.804(1).
>
> (b) In a criminal action, the defendant shall be notified no later than 10 days before the trial that a statement which qualifies as a hearsay exception pursuant to this subsection will be offered as evidence at trial. The notice shall include a written statement of the content of the elderly person's or disabled adult's statement, the time at which the statement was made, the circumstances surrounding the statement which indicate its reliability, and such other particulars as necessary to provide full disclosure of the statement.
>
> (c) The court shall make specific findings of fact, on the record, as to the basis for its ruling under this subsection.

§90.803(24), Fla. Stat. (1995). The cross-referenced statute defines "disabled adult" as:

> a person 18 years of age or older who suffers from a condition of physical or mental incapacitation due to a developmental disability, organic brain damage, or mental illness, or who has one or more physical or mental limitations that restrict the person's ability to perform the normal activities of daily living.

§825.101(4), Fla. Stat. (1995).

The state gave the required advance notice of its intention to offer Mr. Higdon's out-of-court statements under the statute. The trial court conducted a pretrial hearing on the issue. Over petitioner's statutory and confrontation clause

objections, the trial court held the evidence admissible, ruling that Mr. Higdon was disabled, that he was unavailable to testify, and that the statement was sufficiently reliable as "bolstered" by other evidence. (Document 14, Ex. B, at 294.)[3] The court did not mention the confrontation clause.[4]

At trial, over petitioner's renewed and continuing objections (explicitly including on constitutional grounds, *see* Tr. 286), the officer testified as follows:

> Q. Did you discuss this incident, the crime that happened on May 3d, with Ricky Higdon on May 5th?
>
> A. I did.
>
> Q. Where did that discussion take place?
>
> A. At the gas station and Sack and Save food store.
>
> Q. What did Ricky Higdon tell you had happened?

---

[3] Citations to state-court materials included in this record in Document 14, Ex. B, use the numbers at the bottom of the pages.

[4] The trial court based its ruling on these grounds: (1) forcing Mr. Higdon to testify would cause him emotional trauma; (2) his statements, coming only two days after the attacks, were reliable, and contained "substantial information"; (3) Mr. Higdon gave the "volunteered-type" statements to a friend; (4) the statements were "not statements that are intended to be elicited by law enforcement interrogation"; and (5) Mr. Higdon's powers of perception were good, and his statements were believable, bolstered by the other victim's account and "some interconnecting facts and circumstances." (Document 14, Ex. B, at 292-95.) Petitioner unsuccessfully requested a second psychological exam and unsuccessfully requested presentation of Mr. Higdon's testimony by closed-circuit television.

A. He told me that on two nights before, that three white males, one he specifically identified as Barry Crowe, tied him and Eddie Jerkins up, robbed Eddie Jerkins, made Ricky lie down and look away. This was Ricky's words, is looking away. They cut Eddie Jerkins and took Ricky to the—to his camp over in the woods probably about another 50, 75 yards from where the scene was. He said they ransacked his campsite and took his foil—he keeps his loose change that—he sells cans and whatever he can get. He keeps his change in what he called roll ridge packs, which are tobacco packs. They took his change from that, and then they took him over to the slab.

Q. Did he say whether or not they took his knife?

A. They took his knife, too.

Q. What did he say happened at the slabs?

A. They told him if he didn't come up with more money, they were gonna hurt him, they were gonna kill him.

Q. Did he say anything about anybody hitting him or beating him?

A. The suspects that took him to the camp did. They beat him up at the camp and then again slapped him around at the slab.

Tr. 306-08. The officer testified, again over objection, that Mr. Higdon remembered the incident "pretty well." Tr. 308.

## III
## Post-Trial Procedural History

After the jury returned its guilty verdict, petitioner moved for a new trial,

reiterating his contention that the admission of Mr. Higdon's hearsay statement violated the confrontation clause. (Document 14, Ex. B, at 57-63.) The trial court orally denied the motion without explanation. (Document 14, Ex. B, at 66.) Petitioner's appellate counsel filed a brief under *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967). The appellate court affirmed the conviction without explanation. *See Ransom v. State*, 729 So. 2d 922 (Fla. 1st DCA 1998). Petitioner next raised the confrontation clause issue in a motion alleging ineffective assistance of appellate counsel. The Florida First District Court of Appeal (the court in which the ineffective assistance was rendered and in which the motion therefore was properly filed) denied the motion without explanation. *Ransom v. State*, 767 So. 2d 1210 (Fla. 1st DCA 2000).[5] Under Florida law, no review of that decision was available in the Florida Supreme Court. Petitioner did, however, raise the confrontation clause issue in the Florida Supreme Court by petition for writ of habeas corpus explicitly asserting ineffective assistance of appellate counsel. The Florida Supreme Court denied the petition as procedurally barred and did not discuss the merits. *Ransom v. State*, 807 So. 2d 655 (Fla. 2000).

---

[5] In Florida, ineffective assistance of appellate counsel is properly raised by motion under Florida Rule of Appellate Procedure 9.141(c). Previously numbered 9.140(j), the rule was transferred to new Rule 9.141 (and amended non-substantively) in 2000. For convenience, this order uses the new number.

Petitioner then filed the instant petition for writ of habeas corpus under 28 U.S.C. §2254. He asserts that admission of the officer's hearsay testimony violated the confrontation clause.[6]

## IV
## Standard of Review

The petition is governed by the deferential standard of review set forth in the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d). At issue in this case is §2254(d)(1).

The Supreme Court has held that AEDPA "plainly sought to ensure a level

---

[6] Petitioner also raises other issues. The petition is before the court on the magistrate judge's report and recommendation, which concludes that the petition should be denied. The report and recommendation is clearly correct, and is hereby adopted as the opinion of the court, with respect to all issues except the confrontation clause issue addressed in this order.

of 'deference to the determinations of state courts,' provided those determinations did not conflict with federal law or apply federal law in an unreasonable way." *Williams v. Taylor*, 529 U.S. 362, 386, 120 S. Ct. 1495, 1509, 146 L. Ed. 2d 389 (2000) (quoting H.R. Conf. Rep. No. 104-518, at 111 (1996)). The Court has defined "contrary to" and "unreasonable application of" federal law as follows:

> As we stated in *Williams*, §2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. 529 U.S., at 404-405. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. *Id.,* at 405-406. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. *Id.,* at 407-408. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in *Williams* that an unreasonable application is different from an incorrect one. *Id.,* at 409-410. *See also id.,* at 411 (a federal habeas court may not issue a writ under the unreasonable application clause "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly").

*Bell v. Cone*, 535 U.S. 685, 694, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) (citing *Williams*).

The only state court that addressed petitioner's objection to this testimony on the merits was the trial court, which held Mr. Higdon's statement sufficiently

reliable as "bolstered" by other evidence to be admissible. For reasons set forth below, this analysis was contrary to (and in any event would have constituted an unreasonable application of) clearly established federal law as determined by the United States Supreme Court.

**V**
**Confrontation Clause**

At the time of petitioner's trial, the controlling confrontation clause standards were set forth in *Ohio v. Roberts*, 448 U.S. 56, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980), and *Idaho v. Wright*, 497 U.S. 805, 110 S. Ct. 3139, 111 L. Ed. 2d 638 (1990). *Roberts* held that when a declarant is determined to be unavailable,

> his [hearsay] statement is admissible only if it bears adequate "indicia of reliability." Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.

*Roberts*, 448 U.S. at 66. *Wright* refined this test, saying that for admission of statements not within a firmly rooted hearsay exception, the necessary particularized guarantees of trustworthiness

> must be shown from the totality of the circumstances, but . . . the

> relevant circumstances include only those that surround the making of the statement and that render the declarant particularly worthy of belief.

*Wright*, 497 U.S. at 819. The court added that the "particularized guarantees of trustworthiness" must render the out-of-court statement "so trustworthy that adversarial testing would add little to its reliability." *Id.* at 821. Finally, the court said:

> To be admissible under the Confrontation Clause, hearsay evidence used to convict a defendant must possess indicia of reliability by virtue of its inherent trustworthiness, *not by reference to other evidence at trial*.

*Id.*, 497 U.S. at 822 (emphasis added).

So the law was clear. The confrontation clause barred admission of out-of-court statements of unavailable declarants unless supported by a "firmly rooted" hearsay exception or based on "particularized guarantees of trustworthiness" inherent in the statement without reference to other evidence.

Mr. Higdon's hearsay statement fails the *Roberts-Wright* test. It was not admitted pursuant to any firmly rooted hearsay exception. To the contrary, the hearsay exception that purportedly authorized the statement's admission was enacted in 1995. And the statement was not supported by particularized guarantees

of trustworthiness separate and apart from other evidence. The statement was, instead, particularly *un*trustworthy, having been made by a person of limited ability suffering mental health issues severe enough to prevent him from coming to court to testify.[7] The inadmissibility of this testimony under the confrontation clause was so clear that no reasonable argument could have been made to the contrary.[8] And, even more clearly, no reasonable argument could have been made that the

[7] I assume for purposes of this analysis that Mr. Higdon was indeed unavailable to testify. If he were in fact available, no theory—including the state statute upon which the trial court relied—would have supported admitting the hearsay. But the irony in finding Mr. Higdon unavailable, and admitting his out-of-court statements on that basis, is worth noting. This was not a witness who was fully able to observe, recall, and recount events when he spoke to the officer, but lost the ability to do so prior to trial. To the contrary, this was a witness of equally limited ability at both times. A witness with mental health issues so extensive that he cannot,—or will not—come to court to testify hardly seems a reliable source of information. Moreover, hearsay is inadmissible even when the declarant is a person of high ability and impeccable credibility. Admitting hearsay statements of one who would be a poor witness even at trial—and who is otherwise still in the area and capable of coming to court—seems especially inappropriate. The jury's ability to observe such a witness and judge for itself whether the witness remembers events "pretty well" and has communicated accurately what he saw is at the heart of the jury's function. In any event, admitting this evidence plainly violated the rule of *Roberts* and *Wright*.

[8] The state court never addressed the confrontation clause, although petitioner squarely raised the issue. The court did, however, refer to the reliability of Mr. Higdon's statement, concluding, based in part on its consistency with other testimony in the case, that the statement was sufficiently reliable. That conclusion was both plainly wrong and, more importantly, contrary to *Roberts* and *Wright*. Under those decisions, particularized guarantees of trustworthiness cannot be established by reference to other evidence.

Florida statute trumped the confrontation clause.

More recently, the Supreme Court has abrogated the *Roberts-Wright* test, further restricting the admission of hearsay. In *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), decided after petitioner's trial, the Court held that "[w]here testimonial statements are at issue, the *only* indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." *Id.* at 68-69 (emphasis added). *Crawford* bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Id*. at 53-54. Although the meaning of "testimonial" has not yet been fully established, it is clear beyond doubt that a statement to a law enforcement officer two days after events at issue is "testimonial." Indeed, this kind of hearsay testimony by an officer is the very paradigm of evidence disapproved in *Crawford*.[9] Under *Crawford*, as under *Roberts* and *Wright*, admission of Mr. Higdon's out-of-court statement violated the confrontation clause. And again, the issue is not close or subject to reasonable debate.[10]

---

[9] It makes no difference in the case at bar whether Mr. Higdon was unavailable within the meaning of *Crawford*, and I do not address the issue.

[10] Whether *Crawford* applies retroactively on collateral review may be unclear. *Compare Bockting v. Bayer*, 399 F.3d 1010 (9th Cir. 2005) (holding

In short, admission of the officer's testimony regarding what Mr. Higdon told him about the events at issue violated the confrontation clause. The decision of the state trial court—the last state court to address the admissibility of this evidence on the merits—was contrary to (and in any event would have constituted an unreasonable application of) settled law as set forth by the United States Supreme Court. *See, e.g., Williams*.[11]

---

*Crawford* retroactive), *with Murillo v. Frank*, 402 F.3d 786 (7th Cir. 2005) (holding *Crawford* not retroactive). The interplay between any retroactive decision and AEDPA's requirement of deference to a state court that entered a ruling prior to the decision also may be unclear. But these issues make no difference here, because the state decision, when rendered, was contrary to settled law as established by the Supreme Court, and that is so whether measured by the confrontation clause standards in effect at the time or the even more restrictive confrontation clause standards as they exist now.

[11] This case presents a ruling "contrary to," rather than an "unreasonable application of," controlling Supreme Court law, because despite arguments of defense counsel citing relevant federal cases, there is no indication in the state trial court's ruling that the court identified the controlling federal standards or considered them in any way. *See* Document 14, Exhibit B, at 292-95. The court referred only to the newly enacted state statute and, in passing, to a treatise on Florida evidence law. But even had the court correctly identified the governing federal standards, petitioner still would be entitled to relief, because admission of this testimony was an unreasonable, not merely incorrect, application of clearly established federal law. And the same analysis would apply if the other courts in the state system were deemed to have considered the issue, notwithstanding their failure explicitly to address it. Any conclusion by any court that this testimony could be admitted over confrontation clause objection would be contrary to, and an unreasonable application of, federal law as set forth by the United States Supreme Court.

## VI
## Harmlessness

The Supreme Court has made clear that confrontation clause violations are subject to harmless error analysis. *See, e.g., Coy v. Iowa*, 487 U.S. 1012, 1021-22, 108 S. Ct. 2798, 101 L. Ed. 2d 857 (1988). An error is harmless if the court is "able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). Respondent argues that the error in petitioner's case was harmless. It was not.

The evidence of petitioner's presence in the area where the assaults occurred was uncontradicted. But mere presence at the scene of a crime of course does not establish guilt. The state was required to prove beyond a reasonable doubt that petitioner participated in the offenses (either by committing or by aiding and abetting them), not merely that petitioner was present or even that he was a knowing spectator.

On the critical issue of petitioner's participation, the evidence was hardly overwhelming. The two investigating officers saw petitioner at the location, but they did not see him do anything. Petitioner had injured hands, and he had a victim's blood on his person—surely incriminating evidence—but nothing connected the injured hands to these events, and blood can find its way onto a

spectator, or onto one who comes upon a victim after an assault. Of the three testifying eye witnesses, only one (the other victim) implicated petitioner, and he had been drinking heavily and later failed to identify petitioner in a photographic array. Another eye witness seemingly indicated petitioner was not guilty, while a third did not testify either way. Mr. Higdon's out-of-court statement thus broke the one-to-one-to-one tie among the eye witnesses with respect to petitioner's guilt.

Even more important in the harmless error analysis is the prominence given Mr. Higdon's version of events at the trial. First, the prosecutor gave the statement considerable play in his opening:

> Not only will you learn from the physical evidence and the live witness testimony that all three of them kidnapped Ricky Higdon, but you'll learn from Ricky Higdon's statement and from physical evidence that they continued to act in concert and to rob Ricky after they kidnapped him, and then they attempted to kill[] Ricky Higdon.
>
> Ricky Higdon is unavailable to testify in this case, but you will learn that on Sunday, May 5th—and this crime happened on Friday, May 3rd. On Sunday, May 5th, Ricky went and talked to Escambia County Sheriff's Deputy Reggie Jernigan. Reggie Jernigan is the one[] that caught [petitioner] and Harris with Ricky. And Officer Jernigan works off duty there at the Sack and Save gas station, and Ricky just went up to him basically as a friend to tell him what happened.
>
> And you'll learn that the three defendants, like I said, abducted Ricky Higdon to his camp, then they tied Ricky Higdon up, they took a knife that Ricky Higdon had on him, they robbed Ricky Higdon of

> his knife, and also they robbed Ricky Higdon of a pouch of pennies that he had or some pouches of pennies. But these three defendants were looking for the big money. Ricky Higdon didn't have it. The three defendants got very angry. They beat Ricky Higdon, they cut him with the knife, and they went on to try to kill him.
>
> In sum, the evidence is going to show that the three men acted in concert with Eddie Jerkins, they acted in concert in walking off with Ricky Higdon and kidnapping him, and Ricky Higdon told Reggie Jernigan that they all proceeded to rob and attack him.

Tr. 111-12.

In closing argument, the prosecutor repeatedly returned to the hearsay statement. The prosecutor mentioned several times that Mr. Higdon referred to co-defendant Barry Crowe "by name," a clear reference to the hearsay statement. Tr. 400-01, 407-08, 409, 410. The prosecutor then addressed Mr. Higdon's statement in more detail:

> Let me kind of discuss the confinement at the camp and the robbery sort of together. First of all, you know that Barry Crowe and [petitioner] confined Ricky Higdon because Ricky Higdon told Reggie Jernigan [the officer who testified to the hearsay statement] that he tied his hands behind his back. And when Rodney Eddins and Reggie Jernigan caught the criminals, Ricky's hands were tied behind his back. We know there was a confinement and a robbery of everybody because Ricky Higdon told Reggie Jernigan that they took him to his camp, they took his money and his knife, and they beat him up and they took him to these slabs.
>
> Ricky did not identify the defendants one, two, three by name,

> but you know that he means Barry Crowe, [petitioner], and Rayburn Harris were all involved. . . .
>
> Ricky told Reggie Jernigan that they beat and robbed him, and he clearly meant all three of them. We also know it was all three of them because Rayburn Harris told you all three of them were at the camp of Ricky Higdon. Plus you know Barry Crowe was involved because Ricky Higdon referred to him by name.

Tr. 423-24. The prosecutor again referred to Mr. Higdon's hearsay statement in the second part of his closing argument. Tr. 448.[12]

The defense attorneys tried to minimize the impact of Mr. Higdon's hearsay statement in their own opening statements and closing arguments. Thus, for example, petitioner's counsel said in closing argument:

> But the bottom line is this: Mr. Higdon did not testify. We heard his version from Mr. Jernigan, who talked about a conversation they had with Eddie Jerkins present two days after the event. It wasn't an official-type interview. It was just a casual conversation.
>
> And with respect to what happened at the concrete slab, all we know is that Higdon would say they did this, they did that. We know he's retarded. I'm not saying that to put him down, but that's a fact.

---

[12] In support of his harmless error argument, respondent now argues in this court that Mr. Higdon named only Mr. Crowe, not petitioner, as a participant in the crimes. In context, Mr. Higdon's statement plainly referred to petitioner, as the prosecutor emphasized to the jury. The issue was not whether petitioner was present; petitioner plainly was. The issue was whether petitioner was a participant or spectator, and on that issue, Mr. Higdon's statement squarely cast petitioner as a participant.

> That's a fact that cannot be disregarded. And Ricky Higdon had also told him he didn't know who cut him. So the bottom line is, I suggest to you we don't have real evidence of what happened out at the concrete slab except to the extent we can reasonably deduce that Mr. Harris cut Ricky Higdon because of the blood found on the knife and the knife that was in Mr. Harris' possession.
>
> So the bottom line is that has not been proven beyond a reasonable doubt. We didn't hear from an eyewitness that we could cross-examine on that point.

Tr. 385-86. *See also* Tr. 128 (petitioner's counsel's opening statement, informing jury Mr. Higdon will not be at trial); Tr. 440 (asserting in closing: "Ricky Higdon. Ricky's not even here to testify. What the State wants you to believe is what one person told another person about what happened. The statement says they did this, they did that. We can't ask Ricky Higdon who did what because he's not here."); Tr. 453 (further closing argument: "The bottom line is that the State's open-and-shut case, as they described it, ultimately boils down to whether or not you can believe beyond a reasonable doubt the testimony of a drunk and a semiretarded or retarded person who did not testify.").

In sum, the debate over this testimony was a major feature of this trial. The state relied heavily on the testimony, and the defense fought mightily to minimize its impact. Far from being able to conclude that the testimony was harmless beyond a reasonable doubt, I conclude the testimony was almost certainly harmful,

and might well have determined the outcome.[13]

## VII
## Overcoming the Procedural Bar

Ordinarily, issues in a state prosecution that could and should be, but are not, presented on direct appeal are immune from federal collateral attack. *See, e.g.*, *Wainwright v. Sykes*, 433 U.S. 72, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977) (holding that state procedural rules regarding preservation of claims may constitute adequate and independent grounds for state decision and thus bar federal habeas review). But when a petitioner shows "cause" for the procedural default and "prejudice" therefrom, a federal habeas court may address the issue. *See, e.g.*, *Sykes*, 433 U.S. at 87.

Constitutionally ineffective assistance of counsel may supply the necessary "cause," so long as the claim of ineffective assistance has itself been presented to the state courts. *See, e.g.*, *Edwards v. Carpenter*, 529 U.S. 446, 451-52, 120 S. Ct.

---

[13] While not a basis of the decision announced in this order, it bears noting that the state chose to present this evidence, notwithstanding defendants' (obviously substantial) constitutional objections. The state must have known that reversal of any conviction obtained with this evidence was a very substantial possibility. There is considerable tension between the state's decision at trial to offer this evidence in the face of the governing confrontation clause standards, on the one hand, and the state's assertion now that it never really needed the evidence at all.

1587, 146 L. Ed. 2d 518 (2000); *Murray v. Carrier*, 477 U.S. 478, 488-89, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986) ("ineffective assistance of counsel . . . is cause for a procedural default" so long as the ineffective assistance claim first was presented to the state courts). In the case at bar, petitioner's claim of ineffective assistance has been raised and rejected in both the Florida intermediate appellate court and the Florida Supreme Court. *See Ransom v. State*, 767 So. 2d 1210 (Fla. 1st DCA 2000); *Ransom v. State*, 807 So. 2d 655 (Fla. 2000).[14] With respect to cause, therefore, the only issue is whether petitioner received constitutionally ineffective assistance.

It is settled that a defendant has a right to constitutionally effective assistance of counsel on a direct appeal available as of right. *See Evitts v. Lucey*, 469 U.S. 387, 396-97, 105 S. Ct. 830, 83 L. Ed. 2d 821 (1985). Under Florida law, petitioner was entitled to an appeal as of right. He thus was entitled to constitutionally effective assistance on that appeal.

In some cases, an attorney may provide constitutionally effective assistance by filing an *Anders* brief. But as the Supreme Court held in *Smith v. Robbins*, 528

---

[14] Respondent argues that petitioner has only challenged the convictions relating to the Higdon charges and not to the Jerkins charges. This assertion is incorrect. Petitioner's Rule 9.141 motion attacked all counts, seeking dismissal of the charges relating to Mr. Higdon and a retrial on the charges relating to Mr. Jerkins. Document 14, Ex. C, at 5.

U.S. 259, 285-85, 120 S. Ct. 746, 145 L. Ed. 2d 756 (2000), the decision to file an *Anders* brief may itself be ineffective. The general ineffectiveness standard is set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In accordance with *Robbins* and *Strickland*, the filing of an *Anders* brief by petitioner's attorney on direct appeal was constitutionally ineffective only if (1) failing to present the confrontation clause issue in a brief on the merits was objectively unreasonable, and (2) the failure caused prejudice.

To establish that the filing of an *Anders* brief, rather than a brief on the merits, was objectively unreasonable, "it is only necessary for [a petitioner] to show that a reasonably competent attorney would have found one nonfrivolous issue warranting a merits brief . . . ." *Robbins*, 528 U.S. at 288. Petitioner has easily met that standard here. The confrontation clause issue was both obvious and well founded. "[N]o competent counsel would have taken the action that [petitioner's] counsel did take." *Fugate v. Head*, 261 F.3d 1206, 1217 (11th Cir. 2001). Filing an *Anders* brief was objectively unreasonable.

To establish prejudice, a petitioner's burden is substantially greater. In *Robbins*, the Supreme Court said:

> [W]here, as here, the defendant has received appellate counsel who has complied with a valid state procedure for determining whether the

> defendant's appeal is frivolous, and the State has not at any time left the defendant without counsel on appeal, there is no reason to presume that the defendant has been prejudiced. . . . Here, . . . counsel followed a procedure that is constitutional under *Anders* and our other precedents in this area, and Robbins therefore received all the procedural protection that the Constitution requires. We thus presume that the result of the proceedings on appeal is reliable, and we require Robbins to prove the presumption incorrect in his particular case. See *Strickland*, 466 U.S., at 694.

Robbins, 528 U.S. at 286-87. Under this standard, a petitioner must show that "but for his counsel's unreasonable failure to file a merits brief, he would have prevailed on his appeal." *Robbins*, 528 U.S. at 285.

Petitioner has made this showing. The Florida First District Court of Appeal, if faced with this confrontation clause issue on direct appeal, almost surely would have ruled in petitioner's favor. This is so because (1) that court is a good and capable court that can be relied upon to resolve issues such as this correctly, and (2) the correct result in this case was clear. The usual presumption—that the court's affirmance of petitioner's conviction was correct—has been successfully rebutted.[15]

---

[15] Indeed, in at least three other cases, Florida appellate courts have held the same hearsay statute unconstitutional. *See Conner v. State*, 748 So. 2d 950 (Fla. 2000) (holding statute unconstitutional with respect to out-of-court statements of elderly adults); *State v. Brocca*, 842 So. 2d 291 (Fla. 3d DCA 2003) (applying *Conner* to disabled adults); *State v. Hosty*, 835 So. 2d 1202 (Fla. 4th DCA 2003) (same), *cert. granted*, 848 So. 2d 1155 (Fla. 2003). Respondent asserts that, in

In sum, petitioner has shown cause for and prejudice from his failure to raise the confrontation clause issue on direct appeal. The issue thus is properly presented here on the merits.

**IV. Conclusion**

Admission of a non-testifying witness's out-of-court statement to a law enforcement officer about the events at issue is a paradigmatic violation of the confrontation clause. In the case at bar, if this witness's account was going to be used by the prosecution as a basis for convicting petitioner of these crimes—as it was—then petitioner was entitled to confront the witness at trial, and the jury was entitled to observe the witness, to assess for itself his ability to recall and relate what happened, and to consider his demeanor in deciding whether to believe him. Cross-examination has been called the "greatest legal engine ever invented for the discovery of truth." *California v. Green*, 399 U.S. 149, 158, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970) (quoting 5 J. Wigmore, Evidence § 1367, at 32 (J. Chadbourn

---

light of *Conner*, petitioner should now be required to return to the state courts to try again, prior to consideration of his petition in this court. But the state courts have repeatedly refused to consider petitioner's confrontation clause claim on the merits, and there is no reason to believe they would change now. The exhaustion requirement applies to claims, not litigants. I decline, as a matter of discretion, to stay this case while requiring petitioner to go back to the state courts yet again.

rev. 1974)). Calling witnesses live at trial and subjecting them to cross-examination are the heart and soul of the trial process.

Petitioner's conviction, obtained in violation of these principles, cannot stand. His petition for writ of habeas corpus will be granted.

For these reasons,

IT IS ORDERED:

The clerk shall enter judgment stating, "The petition for writ of habeas corpus is GRANTED. Respondent shall release the petitioner from custody on the convictions previously entered in Case No. 96-1963 in the Circuit Court, First Judicial Circuit, Escambia County, Florida, within 60 days, subject, however, to the right of the State of Florida to retry the petitioner within a reasonable time in a manner consistent with this opinion, and to detain petitioner prior to trial to the extent authorized by Florida law and applicable constitutional standards."

SO ORDERED this 27th day of September, 2005.

s/Robert L. Hinkle
Chief United States District Judge